JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Pursuant to Crim.R. 12(K), plaintiff-appellant, the state of Ohio, appeals a decision of the trial court granting a motion to suppress filed by defendant-appellee, Wendell Swan. We reverse the trial court's decision.
The record shows that police officers were present in the parking lot of an apartment complex on Shady Mist Lane to quell a family disturbance. They told an unidentified man to leave the area. That man walked away and entered a car driven by Swan. Swan drove the man back to the area where the officers were conducting their investigation. Subsequently, he and the unidentified man got out of the car.
The officers told the unidentified man to leave. The man pointed to Swan and stated that Swan would drive him to his parents' house, but that he had to go to his apartment first. The officers stated that the man had to leave. Swan walked up to the officers carrying a cup containing ice and the remnants of an unknown beverage. He stated that he would take the man away, but that he needed to get something from his apartment quickly.
One of the officers asked Swan about the cup in his hand. Swan rattled it and told him that it contained only ice. The officer asked to see the cup. He stated that he could not smell any alcoholic beverage.
The officers told Swan that they had asked the unidentified man to leave because he had "caused a big commotion." They told Swan that if he wanted to get involved, he needed to "get the guy out of here" if he wanted to "keep him out of trouble." Swan replied that he needed to be in his apartment.
At that point, one of the officers asked to see Swan's identification. Swan handed him a state identification card, but he could not produce a driver's license. The officer informed him that he was under arrest for operating a motor vehicle without a license. He intended to place Swan in the back of his cruiser while he wrote a citation. He patted Swan down and felt a bulge in his jacket. He removed a bag of marijuana from Swan's pocket.
Subsequently, Swan attempted to pull away from the officers. One officer grabbed him by the arm. He would not put his arms behind his back as requested by the officer, but instead put his hands in front of him and dropped down on the hood of a car. The police officer had to call in other officers to help him arrest Swan.
Swan was subsequently charged with operating a motor vehicle without a valid license pursuant to R.C. 4507.02, resisting arrest pursuant to R.C. 2921.33, disorderly conduct pursuant to R.C. 2917.11, and possession of drugs pursuant to R.C. 2925.11. In granting Swan's motion to suppress, the trial court stated that the "encounter was consensual at the outset." But when the officers would not allow him to go to his apartment, they made a Terry stop without a reasonable suspicion of criminal activity. See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
In its sole assignment of error, the state contends the trial court erred in granting Swan's motion to suppress. It argues that the police officers did not violate Swan's rights by asking for identification in a public place. This assignment of error is well taken.
In reviewing the trial court's decision on a motion to suppress, we must accept the trial court's findings of fact if competent, credible evidence supports them. State v. Sheppard (2001), 144 Ohio App.3d 135,140, 759 N.E.2d 823. But we must independently determine, as matter of law, whether the facts meet the appropriate legal standards. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v. Neu
(Mar. 3, 2000), 1st Dist. No. C-990552.
The United States Supreme Court has held that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to leave and go about his or her business, the encounter is consensual, and the police officer need not possess a reasonable suspicion that the individual is engaged in criminal activity. Florida v. Bostick (1991), 501 U.S. 429, 434,111 S.Ct. 2382; State v. Black (Dec. 31, 1998), 1st Dist. No. C-970874;State v. Hummons (Sept. 18, 1996), 1st Dist. No. C-950747. Simply because most people do respond to a police request, without being told they are free not to respond, does not eliminate the consensual nature of the response. Immigration Naturalization Serv. v. Delgado (1984),466 U.S. 210, 216, 104 S.Ct. 1758; Black, supra; Hummons, supra. "Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Bostick, supra, at 434, 111 S.Ct. 2382, quotingTerry, supra, at 19, 88 S.Ct. 1868; Black, supra; Hummons, supra.
Once a seizure occurs, it needs to be supported by objective justification. The police officers must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." State v. Andrews
(1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, quoting Terry, supra, at 21, 88 S.Ct. 1868. The standard is objective: would the facts available to the officer at the moment of the seizure warrant an individual of reasonable caution in the belief that the action taken was appropriate?Andrews, supra, at 87, 565 N.E.2d 1868; Black, supra.
The record in this case does not demonstrate that a seizure occurred until the police officers decided to detain Swan when he could not produce a valid driver's license. At that time, they could point to specific and articulable facts to show that Swan was subject to seizure for operating a motor vehicle without a license. Thus, that seizure did not violate his Fourth Amendment rights. See State v. Kiefer, 1st Dist. No. C-030205, 2004-Ohio-5054; State v. Grafinreed (Aug. 10, 2001), 1st Dist. No. C-000173.
Prior to that time, the whole sequence of events was a consensual encounter. The evidence showed that Swan initially approached the officers. The officers never told him that he could not go to his apartment. They simply told him that the other individual had to leave the area. They did not engage in any physical force or show of authority to restrain Swan's liberty or to cause him to believe that he was not free to leave. Simply asking Swan to produce his identification did not change a consensual encounter into a seizure. See Hiibel v. Sixth JudicialDist. Ct. of Nevada, Humdoldt Cty. (2004), ___ U.S. ___, 124 S.Ct. 2451,2458; Black, supra; Hummons, supra.
Accordingly, we hold that the trial court erred in granting Swan's motion to suppress. We sustain the state's assignment of error, reverse the trial court's judgment, and remand the case for further proceedings.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter and Sundermann, JJ.